UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x
KAHENE PETERKIN,

                    Plaintiff,         08 Civ. 8428 (PAC)(DFE)
                                       (This is not an ECF case.)
          - against -                  REPORT AND RECOMMENDATION
                                            TO JUDGE CROTTY
DR. HALKO,
NA HENSON, and
P.A. WILLIAMS,

                    Defendants.
-------------------------------x

DOUGLAS F. EATON, United States Magistrate Judge.

     Kahene Peterkin, a New York State prisoner proceeding *pro se*, brought this lawsuit under 42 U.S.C. §1983 concerning events in July 2008 at Sing Sing Correctional Facility.  The summons and complaint were served upon Dr. Halko and P.A. Williams, but not upon the third defendant NA Henson.  (See Doc. #15.)

     On January 4, 2009, Peterkin submitted a motion for the Court to request a volunteer counsel for him.  **I hereby deny that motion (Doc. #10)** because I find that "the merits of the indigent's claim are thin and his chances of prevailing are therefore poor."  *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001).

     On January 20, 2009, Halko and Williams served plaintiff with Doc. #12 (notice of motion for Rule 12 dismissal), Doc. #11 (notice to *pro se* litigant who opposes a Rule 12 motion that is supported by matters outside the pleadings), Doc. #13 (memorandum of law), and Doc. #14 (declaration of AAG Julinda Dawkins, with exhibits).  Their primary argument was that plaintiff failed to exhaust his administrative remedies.  (Doc. #13, pp. 3-8.)  "If nonexhaustion is not clear from the face of the complaint, a defendant's motion to dismiss should be converted, pursuant to Rule 12(b), to one for summary judgment limited to the narrow issue of exhaustion ...."  *McCoy v. Goord*, 255 F.Supp.2d 233, 251 (S.D.N.Y. 2003)(Chin, J.)  In the case at bar, Doc. #11 gave the *pro se* plaintiff fair notice of Rule 56 and he submitted his own documents outside the pleadings.

     On February 10, 2009, plaintiff served Doc. #17, which consists of a 5-page memorandum (with case citations about the merits but not about exhaustion), and a one-page declaration describing his exhibits.  Exhibit A contains 6 pages; plaintiff

-1-

says these show that his "grievance was filed and [was] intentionally stopped by F. Robinson," supervisor of the inmate grievance program at Sing Sing.  Exhibit B contains four pages of medical records dated 7/11/08 to 7/28/08.  Exhibit C contains six pages of earlier medical records (ending 7/9/08); plaintiff's declaration says that Exhibit C also contains a "letter informing medical staff of injury and how to obtain document[]ed test results which was never done."  No such letter is contained in the Court's copy of Doc. #17, so I requested AAG Dawkins to fax me the last exhibit from her copy of Doc. #17.  She faxed me plaintiff's Exhibit D, which contains nine pages of medical records dated from 7/28/08 to 9/18/08, plus his 2-page 10/19/08 letter to Ms. Hopkins at Elmira Correctional Facility in which he sought "a copy of my MRI ... or put me in for another MRI."  **I direct the Docket Clerk to docket AAG Dawkins's fax as "Exhibit D of Plaintiff's Opposition to the Defendants' Motion to Dismiss."**

**Also, I direct the Docket Clerk to note on the docket sheet's first page that plaintiff's address is now:**

> Kahene Peterkin #08A3192
> Clinton Correctional Facility
> P.O. Box 2001
> Dannemora, NY 12929

For the reasons set forth in today's Report, I recommend that Judge Crotty dismiss the Complaint, without prejudice to the filing of a new lawsuit if (and after) plaintiff exhausts his administrative remedies.

## DISCUSSION

AAG Dawkins's memorandum of law correctly notes that, as amended by the Prison Litigation Reform Act of 1995 ("PRLA"), 42 U.S.C. §1997e(a) provides (with my emphasis in bold type): "**No action shall be brought** with respect to prison conditions under [42 U.S.C. §1983], or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility **until** such administrative remedies as are available are **exhausted.**" Indeed, this statute was quoted at page 3 of the form Complaint used by Peterkin.

The Second Circuit has held: "[W]here exhaustion is required, failure to do so must result in dismissal, notwithstanding efforts by the inmate-plaintiff to pursue administrative remedies while simultaneously seeking relief in federal court. .... Subsequent exhaustion after suit is filed

therefore is insufficient." *Neal v. Goord*, 267 F.3d 116, 117-18, 122 (2d Cir. 2001).

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life ...." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983 (2002). The "boundaries of proper exhaustion" are defined by the grievance requirements at the prison. *Jones v. Bock*, 127 S.Ct. 910, 923 (2007). In New York prisons, the inmate's grievance is required to offer a "concise, specific description of the problem and **the action requested**." 7 NYCRR §701.5(a)(2) (emphasis added).

Peterkin's Complaint, at page 3, Section II-D (Facts), says: "I arrived in Sing Sing Corr. [Fac.] on July 8, 2008 and [at my prior prison] I was on [five specific medications] for high blood pressure. And [I was on] tramadol [brand name Ultram] 50 mg and cyclo-benzaprine [brand name Flexeril] for pain medication and muscle relaxers for herniated disc in back and neck area. I suffer tremendous pain in my back and neck and do not receive any [pain] medication due to Dr. Halko canceling my [pain] medication prescriptions. I repeatedly complained about my back and the pain I was receiving from not having my meds and [not?] receiving physical therapy. Dr. Halko denied me [pain] meds and referred me to Medical Records Dept. whom I wrote to twice with no response. While in HBA22 Top[,] which I wasn't suppose[d] to be due to medical conditions[,] I was forced to sleep in top bunk. I received a Bottom Bunk Pass and still was made to sleep on top bunk [be]cause officers didn't wanna move me to a single cell. While forced to sleep in top bunk I fell out of bed around 3 AM and was taken to Yonkers [Mount Vernon] hospital on July 20 [2008] for chest pain from hitting chest on locker after falling out of top bunk. Still to date I do not receive any pain medication for [the pre-existing] herniated disc an[d] [I] suffer severe pain in back and neck area."

Plaintiff has submitted some of his medical records to me at Doc. #17, Exh. C. In an entry dated 7/8/08, an RN named E.H. wrote: "[Peterkin] Has been on Ultram. Instructed [that Ultram is] not given at SSCF [Sing Sing Corr. Fac.]. I offered Motrin or Tylenol. [Peterkin] refused both." In an entry dated 7/9/08, an RN named R.J. wrote: "Spoke with inmate to advise him of meds ordered by SSCF MD. Advised if inmate has questions ab[ou]t medication orders he needs to go to sick call for MD appt. for further discussions of medical plan. Inmate agitated and upset - - threatening legal action."

Plaintiff has submitted some additional medical records at Doc. #17, Exh. B. In an entry dated 7/11/08, someone (possibly

Dr. Halko) wrote:  "Pt. will get his old med. documents since RTO [illegible] data back."  In an entry dated 7/17/08, the RN named E.H. wrote:  "Says his [right] shoulder keeps popping out.  Says was playing BB and [it] popped out of place X 4."  In an entry dated 7/18/08, RN Conklin wrote:  "1. Bottom Bunk.  2. Dr. appt. ASAP for multiple [complaints of] [right] shoulder, HTN [hypertension], LBP [lower back pain]."

That last entry indicates that the Bottom Bunk Pass was issued on July 18, 2008, which was a Friday.  It is unclear whether plaintiff's cellmate was entitled to retain the bottom bunk.  In any event, plaintiff did not receive a bottom bunk on Friday night or Saturday night.  The Complaint alleges that he fell out of the top bunk around 3:00 AM on Sunday July 20, 2008.

I turn now to the other pages at Doc. #17, Exh. B.  In an entry dated 7/20/08 at 3:50 PM, a person named L.L. wrote:  "[Peterkin] presented to ER via stretcher chair.  States re-occurring midsternal CP [chest pain] since 10 AM.  While in yard, commenced sensation of dizziness.  Consumed lunch and returned back to yard.  Requested transfer to E.R. for B.P. [blood pressure?] assessment.  States pain "7" on 1-10 pain scale. Verbalizes compliance with cardiac meds.  Denies nausea/vomiting [illegible] pain with exhalation.  Lungs clear bilaterally [no] cough/sputum production [no] edema.  Vitals stable 135/88 HR 102 Temp 97.7 RRRO.  Also verbalized concern re (1) Ultram for LBP and Flexeril, (2) Bottom Bunk accommodations.  Advised seeking counselor with Blk Sgt./O.I.C.  EKG obtained.  Dr. Halko notified, ordered I/M transfer to area OSH [outside hospital?] for further eval + tx w/c aware via ambulance."

The next page is the Aftercare Instructions of The Mount Vernon Hospital, which mention "CHEST WALL PAIN ... CONTINUE MOTRIN FOR PAIN."  The last line says "July 20, 2008, 21:38," which seems to be the time he was discharged to be returned to Sing Sing.

The Sing Sing records continue with an entry dated 7/20/08 at 11:40 PM stating "admit to infirmary," and an entry dated 7/21/08 which is hard to read but seems to say: "Trauma to chest causing chest pain.  [Illegible]  Bottom Bunk."

Peterkin's first written grievance appears at Doc. #14, Exh. D.  It is dated 7/21/08 but stamped "Received Aug. 01, 2008 Sing Sing I.G.P."  Peterkin wrote:  "I am grieving the fact that I was forced to sleep on the top bunk with a Bottom Bunk Pass, and on 7/19/08 [or 7/20/08 at 3:00 AM?] I fell and was injured trying to get out of the bed.  I have [and previously had] herniated disc

in my back and neck, and a degenerative joint disorder in my right shoulder.  As of 7/21/08 after being discharged from the infirmary and told by the doctor that I can not be placed on a top bunk[,] I was still forced to sleep on a top bunk on 7/21/08. After going to the hospital on 7/20/08 I was taken to Mount Vernon Hospital on Sunday 7/20/08 for sharp chest pains I sustained from the fall and hitting my chest on the lockers. **Action Requested:  I ask to be moved to a single cell or placed in a cell where I am assigned to the bottom bunk."**  (Emphasis added.)

This grievance was given number 44850-08.  Peterkin has sent me additional documents concerning this grievance.  (Doc. #17, Exh. A.)  One page is a form showing that a hearing was held before five IGRC Hearing Members, who signed an 8/7/08 ruling as follows:  "Denied: Griev[an]t is currently in HBC [apparently a disciplinary cell with a single bunk] and is no longer affected by this matter."  The bottom half of this form said "Return within 7 calendar days," but Peterkin signed it on 8/27/08; he checked the line that said, "I disagree with the IGRC response and wish to appeal to the Superintendent," and the document is stamped "Received Sep 02, 2008 Sing Sing IGP Supervisor."

At that juncture, Peterkin sent his Complaint, dated August 29, 2008, to our Court.  This violated 42 U.S.C. §1997e(a), which was quoted at page 3 of the Complaint form.  At page 4, the Complaint form asked three questions that Peterkin answered as follows:

1.  Which claim(s) in this complaint did you grieve? [A:] Being forced to sleep in the top bunk and falling out while having [a] medical condition.

2.  What was the result, if any?  [A:] Denied [be]cause I was moved to SHU shortly after falling [filing?] Grievance.

3.  What steps, if any, did you take to appeal that decision?  Describe all efforts to appeal to the highest level of the grievance process.  [A:] Filed an appeal on Grievance to Superintendent.

The Complaint to our Court arrived in an envelope postmarked September 4, 2008.  On that same date, Peterkin wrote a letter to the highest level of the grievance process, the Central Office Review Committee ("CORC") in Albany.  (A very faint photocopy of that letter appears at Doc. #17, Exh. A, last page.)  In short, plaintiff sent the Complaint to our Court before exhausting his

administrative remedies.  Moreover, he never filed a grievance as
to the denial of pain medication.

After receiving AAG Dawkins's dismissal motion (Docs. ##11-
14), Peterkin makes a weak attempt to excuse his violation of the
PLRA.  He encloses the original of a 9/3/08 memorandum to him
from F. Robinson, IGP Supervisor at Sing Sing, who wrote:  "I
have reviewed your [8/27/08] request to appeal the IGRC's hearing
that resulted in the dismissal of your grievance [#44850-08].
The grievance was dismissed in accordance with Directive #4040,
and you have not presented any additional information that would
warrant the re-opening of said grievance.  Your request is hereby
denied."  (Doc. #17, Exh. A, first page.)  Peterkin's 2/10/09
declaration asserts that Exh. A "show[s] that plaintiff['s]
grievance was filed and intentionally stopped by F. Robinson."

However, that was not the end of the process.  On September
17, 2008, Peterkin filed Grievance #45110-08 ("not allowed to
appeal IGRC dec. to Supt."); see Doc. #14, Exh. B at sidetab A.
This resulted in a 9/30/08 decision signed by the Superintendent,
who wrote:  "Grievant claimed that IGP Supervisor denied him his
right to appeal to Superintendent for Grievance #44850-08.
Grievant would like to be able to exhaust his administrative
remedies according to Directive #4040.  Grievance denied.
'Grievant is advised that SS [Sing Sing] #44850-08 was filed, a
hearing was conducted on 8/7/08, but was closed on 8/25/08 due to
grievant's having failed to appeal.'" (Doc. #17, Exh. A, third
page.)

Peterkin was transferred from Sing Sing to Elmira shortly
before that 9/30/08 decision, but he received it.  On the bottom
of the form, Peterkin wrote on 10/8/08:  "I am appealing this
decision [be]cause I did not fail to appeal[;] my appeal was
mailed in on 8/23/08.  Due to facility mail procedure my appeal
arrived late."  Peterkin's assertion about "8/23/08" was
incorrect; he had signed his first appeal on 8/27/08.

Nevertheless, it appears that Sing Sing held a 10/9/08
rehearing on Grievance #44850-08, by five hearing members (two of
whom had not served at the 8/7/08 hearing).  The 8/7/08 decision
had essentially ruled that the grievance's "requested action" was
moot because Peterkin had been moved to a single cell.  The
10/9/08 decision focused on the following part of an 8/5/08 memo
from R.N. Figueroa to Frank Robinson:  "To address the claim that
Grievant fell from the top bunk and sustained an injury;
Grievant's medical records were reviewed, no reported injuries
noted."  The 10/9/08 decision said:  "Denied: Per Medical,
grievant's medical records were reviewed, no reported injuries

-6-

noted." On 10/21/08, Peterkin appealed to the Sing Sing Superintendent, who affirmed in a decision dated 11/4/08. (Doc. #14, Exh. D contains the 7/21/08 grievance, the 8/5/08 memo, the 10/9/08 decision, the 10/21/08 appeal, and the Superintendent's 11/4/08 affirmance; plaintiff's Doc. #17, Exh. A contains the 10/9/08 decision.)

In any event, Peterkin did not file a proper appeal to CORC as to either Grievance (#44850-08 or #45110-08). As mentioned earlier, he had sent a premature letter to CORC dated September 4, 2008; he received the following response dated January 5, 2009:

> This is to acknowledge receipt of your correspondence dated September 4, 2008.

> Contact with the facility administration reveals that the grievance in question, SS-44850-08, regarding a bottom bunk, was subsequently appealed and answered by the Superintendent on November 4, 2008. The IGRC Clerk is not in receipt of any further appeal from you.

> Department of Correctional Services' policy, Directive #4040, Inmate Grievance Program, (IGP), provides inmates with an orderly, fair, simple and expeditious method of resolving grievances pursuant to the Correction Law. The directive makes no provision for an inmate to refer grievances directly to Central Office.

> You are advised that you must submit your grievance or appeal directly to the IGRC Clerk at the facility. Therefore, your document is being returned to you. We will not retain a copy of your document in this office.

(Doc. #17, Exh. A, fifth page.) Similarly, in *Boddie v. Bradley*, 228 Fed. Appx. 5, 6, 2007 WL 595247, *1 (2d Cir. Feb. 16, 2007), the Second Circuit wrote that "the letters that Boddie sent directly to DOCS officials are not, on their own, sufficient to meet the §1997e(a) exhaustion requirement."

To summarize: As to one of the claims in the Complaint (failure to give plaintiff a single cell or a bottom bunk, a failure that was allegedly a contributing cause of an injury), Peterkin filed a grievance but did not properly exhaust his administrative remedies prior to filing his Complaint. As to the other claim in the Complaint (denial of pain medication, muscle

relaxant, and physical therapy), Peterkin never even filed a grievance.  See Doc. #14 at Exh. B, declaration of Frank Robinson concerning the grievance files at Sing Sing, and at Exh. C, declaration of Karen Bellamy concerning the grievance appeals to CORC.  Peterkin's opposition papers (Doc. #17) do not dispute that he could have grieved the failure to provide him with pain medication, and that he did not file any such grievance.

Pursuant to *Hemphill v. New York*, 380 F.3d 680, 690 (2d Cir. 2004), I make the following findings.  First, administrative remedies were in fact available to Peterkin in 2008.  Second, the actions of the three defendants (and even the 9/3/08 action of non-defendant Frank Robinson) did not prevent Peterkin from exhausting his remedies, and do not estop the defendants from raising Peterkin's failure to exhaust.  Third, no special circumstances justify Peterkin's failure to comply with the procedural requirements of New York's Inmate Grievance Program.

## CONCLUSION AND RECOMMENDATION

For the reasons set forth in this Report, I recommend that Judge Crotty dismiss the Complaint, without prejudice to the filing of a new lawsuit if (and after) Peterkin exhausts his administrative remedies.  If Peterkin wishes to sue officials of Elmira Corr. Fac., he must sue in the Western District of New York.  If he wishes to sue officials of Upstate or Clinton Corr. Fac., he must sue in the Northern District of New York.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, any party may object to this recommendation within 10 business days after being served with a copy (i.e., **no later than May 22, 2009**) by filing written objections with the Clerk of the U.S. District Court and mailing copies (a) to the opposing party, (b) to the Hon. Paul A. Crotty, U.S.D.J. at Room 735, 500 Pearl Street, New York, NY 10007 and (c) to me at Room 1360, 500 Pearl Street.  Failure to file objections within 10 business days will preclude appellate review.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), and 6(e).  Any request for an extension of time must be addressed to Judge Crotty.

DOUGLAS F. EATON
United States Magistrate Judge
500 Pearl Street, Room 1360
New York, New York 10007

Dated:   New York, New York
         May 5, 2009

Copies of this Report and Recommendation are being sent by mail
to:

Kahene Peterkin #08A3192
Clinton Correctional Facility
P.O. Box 2001
Dannemora, NY 12929    (also enclosing the current docket sheet)

Julinda Dawkins, Esq.
Assistant Attorney General
State of New York
120 Broadway
New York, NY 10271

Hon. Paul A. Crotty